UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE R. BRADT,

      Plaintiff,                    Civil Action No. 16-10240

           v.                  District Judge Matthew F. Leitman
                                        Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

    Plaintiff Michelle R. Bradt ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #17] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #16] be DENIED.

## I.  PROCEDURAL HISTORY

    Plaintiff applied for SSI on June 25, 2014, alleging disability as of December 15, 2013 (Tr. 88). After the initial denial of benefits, Plaintiff requested an administrative hearing,

held in Oak Park, Michigan on July 29, 2015 (Tr. 25). Administrative Law Judge ("ALJ")

Jerome B. Blum presided. Plaintiff, represented by attorney Mandy Kelly, testified (Tr. 27-

35), as did Vocational Expert ("VE") James Fuller (Tr. 35-36). On August 13, 2015, ALJ

Blum found that Plaintiff was not disabled (Tr. 11-21). On November 24, 2015, the Appeals

Council denied review of the ALJ's opinion. (Tr. 1-4). Plaintiff filed suit in this Court on

January 25, 2016.

## II. BACKGROUND FACTS

Plaintiff, born February 8, 1984, was 31 years old when the ALJ issued his decision.

(Tr. 21, 88). She left school after 10th grade and worked as a health aide (Tr. 123). Plaintiff

alleges disability as a result of an emotional impairment, depression, and a learning disability

(Tr. 122).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She previously worked as a home care aide (Tr. 27). The job entailed cooking,

cleaning, and giving medicine (Tr. 28). She left the job because she was "hearing voices"

and was afraid that she would harm the patient (Tr. 28).

Plaintiff currently received psychiatric treatment for the conditions of "anger, fear,

schizo, stress, [and] depression" (Tr. 29). She experienced suicidal thoughts on a daily basis

(Tr. 29). When she was around people who made her "angry," she experienced homicidal

thoughts (Tr. 30). She experienced frequent crying jags (Tr. 30). The auditory and visual

hallucinations included voices telling her to commit suicide and "people laughing, and angry and evil demons" (Tr. 30).  She experienced sleep disturbances due to "fear" (Tr. 30).

On "bad" days (four or five times a week) Plaintiff spent the day sleeping (Tr. 31). She took at least four hour-long naps every day and experienced panic attacks on a daily basis (Tr. 31-33).  Panic attacks were characterized by fear and chest tightness (Tr. 33).  She currently took anti-depressives and an anti-psychotic medication (Tr. 32).  She experienced the medication side effect of sleepiness (Tr. 32).  She lived with her two under-aged children and cleaned the house on "good days" and "sometimes" cooked (Tr. 33-34).  Her meal preparation was limited to food that could be microwaved (Tr. 34).  She did not have any hobbies or activities (Tr. 35).  She had Medicaid and was currently attempting to procure child support from the father of her children (Tr. 34).

### B. Medical Evidence

### 1. Treating Sources

In June, 2011, Plaintiff sought emergency treatment for chest pain (Tr. 181).  She denied a psychiatric history (Tr. 182).  A psychiatric review, EKG, and stress test were unremarkable (Tr. 182-183).  She was discharged in stable condition (Tr. 185-186, 190, 193-194).   January, 2013 emergency treatment records (ear  pain) show that she was fully oriented with an appropriate affect (Tr. 196).

A July, 2014 psychological intake evaluation by New Oakland Child-Adolescent & Family Center states that Plaintiff reported current stress due to divorce, lack of housing, and

financial problems (Tr. 205).  Plaintiff reported that she had "trouble getting along at work and completing tasks" and was depressed, unmotivated, and irritable (Tr. 205).  She also reported "flashbacks and nightmares" (Tr. 205).  She denied current homicidal or suicidal ideation (Tr. 206).  She reported past physical and sexual abuse (Tr. 206).  Plaintiff reported that she received inpatient mental health treatment when she was younger (Tr. 207).  However, at another point in the interview, she denied psychiatric hospitalizations (Tr. 205).  She reported that she and her four children were currently living with various family members (Tr. 207).  She reported current occasional alcohol use (Tr. 208).  She exhibited normal orientation, attitude, affect, and psychomotor activity (Tr. 210-211, 221-222).  She reported flashbacks but denied hallucinations or psychosis  (Tr. 210, 212).  She exhibited adequate concentration and normal speech (Tr. 210).   Social worker Crystal Marsack assigned Plaintiff a GAF of 44, noting the presence of depression, post traumatic stress disorder ("PTSD"), and economic, occupational, and environmental problems[1] (Tr. 212).  Plaintiff reported that she had been prescribed an antidepressant by her primary care doctor but had run out of medication two months earlier (Tr. 216).  She was referred for individual therapy and medication management (Tr. 213).

---

[1]4

A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* (4th ed.2000)("*DSM-IV-TR*"), 34.

Therapy records from the following week note Plaintiff's report that she was taking care of her children, cooking, had friends, and had bought a car and clothing (Tr. 225). She reported that she wanted to "get back [her] SSI so she could take care of her children (Tr. 226). The same month, records by psychiatrist Sean Prystash, M.D. state that Plaintiff again reported psychiatric hospitalizations in her teens but none since (Tr. 229, 233). She reported chronic auditory hallucinations since her teens but had "learned how to deal" with them (Tr. 229). Plaintiff denied suicidal or homicidal ideation (Tr. 237). He diagnosed Plaintiff with a schizoaffective disorder and major depression (Tr. 232). He prescribed Abilify, Trazodone, and Zoloft (Tr. 236). He recommended partial inpatient treatment, noting that she appeared "dazed/confused" during the interview and lacked "focus" (Tr. 237). Plaintiff exhibited normal psychomotor activity and adequate concentration and impulse control (Tr. 241). She was referred for outpatient therapy and medication review (Tr. 243).

August, 2014 treating records state that Plaintiff was currently able to play with her children, go outside, play video games with her son, and go to "the park or movies" (Tr. 245). She was discharged from treatment the following week after failing to attend sessions three days in a row (Tr. 248-249). The same month, Plaintiff reported housing and personal problems (see above) (Tr. 269). She reported depression, irritability, difficulty following directions, and hearing and seeing "things" (Tr. 269). Plaintiff reported that she could deal with the voices and that it was "normal for her" (Tr. 269).

Treating notes from the following month note Plaintiff's report that she was "a good

-5-

mom, cook, and singer" (Tr. 272). Staff notes state that Plaintiff would be assisted in receiving subsidized housing, and procuring an attorney for her SSI appeal (Tr. 274). October, 2014 notes by Dr. Prystash state that she was doing "a little better" and reported no side effects other than "tolerable" "mild sedation" (Tr. 281). She displayed adequate judgment, orientation, and impulse control (Tr. 283). Her dosage of Zoloft and Abilify were increased (Tr. 284). She was discharged at the end of the same month after failing to show up for appointments (Tr. 286). The following month, Plaintiff restarted treatment, reporting severe depression and daily panic attacks after moving into a homeless shelter (Tr. 295). She expressed hostility toward a relative but denied homicidal ideation (Tr. 295). She expressed suicidal ideation but no intent, plan or attempt (Tr. 296). She reported that she had learned how to deal with auditory and visual hallucinations (Tr. 297). She demonstrated good judgment, impulse control, and insight (Tr. 298, 309, 312). Dr. Prystash's December, 2014 records note Plaintiff's report of low moods and elevated anxiety (Tr. 332). She displayed normal thought content, concentration, and psychomotor activity (Tr. 323). Her dosage of Zoloft was increased and she was prescribed Seroquel (Tr. 325). Michael Watts, M.D.'s April, 2015 records note that Plaintiff's condition was stable and that she displayed a normal attitude, mood affect, thought process, thought content, and attention (Tr. 329). She denied hallucinations (Tr. 329, 331).

The following month, Dr. Watts completed an assessment, finding that Plaintiff experienced the medication side effects of dizziness, drowsiness, headache, nausea, blurred

vision, upset stomach, fatigue, and insomnia (Tr. 332). He found that she experienced anxiety, low self-esteem, bipolar disorder, hallucinations, and "vigilance" (Tr. 333). He found that she was unable to meet competitive standards in maintaining attention for two-hour segments, maintaining regular attendance, completing a workday, or performing at a consistent pace (Tr. 334). He found that Plaintiff would be unable to meet competitive standards in understanding, remembering, or carrying out detailed instructions, or dealing with the stress of semiskilled and skilled work (Tr. 334). He found that she would be expected to miss more than four days a month due to psychological symptoms (Tr. 335).

### 2. Non-Treating Sources

In July, 2014, Daniel Blake, Ph.D. performed a non-examining review of the mental health treating records on behalf of the SSA, noting June, 2011 records showing no past psychiatric history, January, 2013 records showing a normal affect, and July, 2014 records showing adequate judgment and attention (Tr. 39). Dr. Blake noted that Plaintiff cooked, did household chores, drove, shopped, and played with her children (Tr. 41). He found that due to affective, anxiety-related, and substance addiction disorders, Plaintiff experienced mild restriction in activities of daily living and social functioning and moderate difficulties in concentration, persistence, or pace ("CPP") (Tr. 40). He concluded that Plaintiff was capable of "sustained simple work activity" (Tr. 44).

### C.    Vocational Expert Testimony

VE James Fuller characterized Plaintiff's past work as a home health aide as

exertionally medium and semiskilled[2] (Tr. 35-36).  The VE testified that if Plaintiff's "various different complaints, hallucinations, anger, [and] homicidal [and] suicidal" ideation were credited, she would be unable to perform any work (Tr. 36).

### D.    The ALJ's Decision

Citing the medical records, the ALJ determined that Plaintiff suffered from the severe impairments of "depressive disorder and generalized anxiety disorder" but that neither of the impairments met or equaled a listed impairment under 20 C.F.R Part 404, Subpart P, Appendix 1.  (Tr. 13).  He found that Plaintiff experienced mild restrictions in activities of daily living and social functioning, but moderate difficulties in CPP.  (Tr. 14-15).  He found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform a full range of unskilled work (Tr. 16).  The ALJ found that Plaintiff's former work activity did not meet the income requirements for Substantial Gainful Activity (Tr. 20 *citing* 20 C.F.R. 416.960(b)(1)).

 The ALJ rejected Plaintiff's alleged degree of psychological limitation (Tr. 20).  He cited Dr. Prystash's July, 2014 psychiatric intake observations of a normal thought process,

------

[2] 20 C.F.R. §404.1567 (a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;" *light* work as "lifting no more and 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involved lifting no more than 100 pounds at a time with frequent lifting of objects weighing up to 50 pounds.

-8-

thought content, psychomotor activity, and attention and concentration (Tr. 17). He noted that Plaintiff symptoms of anxiety and depression decreased with treatment and counseling (Tr. 17). He cited an August, 2014 evaluation stating that while Plaintiff reported that she was "overwhelmed," she exhibited adequate attention and concentration (Tr. 17). He cited an October, 2014 medication review by Dr. Prystash showing that Plaintiff denied medication side effects aside from the "tolerable" effect of "'mild sedation'" (Tr. 17, 281). The ALJ noted that the March, 2015 records showed no hallucinations and a normal mood, affect, thought process, thought content, psychomotor activity, attention, concentration, and speech (Tr. 18). He cited Dr. Prystash's finding from the same month that Plaintiff's condition was stable (Tr. 18).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g); *Sherrill v. Secretary of Health and Human Services*, 757 F.2d 803, 806 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229, S.Ct. 206, 83 L.Ed. 126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.

1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death of which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at Step 5 to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

-10-

# V.  ANALYSIS

## A.  Listing 12.03

Plaintiff argues that she meets Listing 12.03 at Step Three of the sequential analysis. *Plaintiff's Brief,* 12-18, *Docket #16,* Pg ID 395;  20 C.F.R  Part 404, Subpart P, Appendix 1, § 12.03 (schizophrenic, paranoid and other psychotic disorder).  She contends, in effect, that the evidence of continued hallucinations and paranoia supports a finding of disability on the basis that she met or medically equaled the listing.  *Id.* at 15.

 "At the third step of the administrative analysis, a claimant meeting or medically equaling the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds v. Commissioner of Social Security*, 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.' " *Id.* (*citing* 20 C.F.R. § 404.1525(a)). While "[t]he Sixth Circuit does not require a heightened articulation standard from the ALJ at Step Three of the sequential evaluation process" *Grohoske v. Comm'r of Soc. Sec.*, 2012 WL 2931400, *3 (N.D. Ohio, July 18, 2012), it "has made clear the step-three 'reasons requirement is both a procedural and substantive requirement, necessary in order to facilitate effective and meaningful judicial review.' " *Brock v. Colvin*, 125 F.Supp.3d 671, 672 (N.D. Ohio, 2015)(*citing Reynolds*, 424

Fed.Appx. at 414). Nonetheless, the Court may "overlook the ALJ's failure to articulate his

Step Three findings" if the error is found to be "harmless in nature." *M.G. v. Commissioner*

*of Social Sec.*, 861 F.Supp.2d 846, 859–60 (E.D.Mich.,2012)(*citing Scott ex rel. Scott v.*

*Astrue*, 529 F.3d 818, 822 (8th Cir. 2008)).

    Under the version of Listing 12.03 applicable at the time of the administrative

decision,[3] the required level of severity for these disorders is met when the requirements for

both the "A" and "B" criteria are satisfied, or when the requirements in "C" are satisfied:

> A. Medically documented persistence, either continuous or intermittent, of one
> or more of the following:
>
> 1. Delusions or hallucinations; or
> 2. Catatonic or other grossly disorganized behavior; or
> 3. Incoherence, loosening of associations, illogical thinking, or poverty of
> content of speech if associated with one of the following:
> a. Blunt affect; or
> b. Flat affect; or
> c. Inappropriate affect; or
> 4. Emotional withdrawal and/or isolation;
>
> AND
>
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or

---

[3]
    It should be noted that in September, 2016, the SSA revised its Listings for mental disorders. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01 (Sept. 26, 2016). Included were language changes to the "B" and "C" criteria of the listings discussed below. The changes, effective January 17, 2017, are not applicable to the present case, decided August 13, 2015. *Id.* at fn. 1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions"); *see also Hooks v. Colvin*, 2017 WL 622215, *7 (N.D.Ill., February 15, 2017).

2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R Part 404, Subpart P, Appendix 1, § 12.03.

The ALJ's failure to discuss Listing 12.03 does not provide grounds for remand. As a threshold matter, Plaintiff failed to allege disability resulting from any of the Listing 12.03 conditions in her application for benefits (Tr. 122), in the pre-hearing memorandum (Tr. 336-337), or in her arguments to the Appeals Council (Tr. 177-179). It is well settled that the claimant bears the burden of showing that her impairment meets a particular listing. *See Buress v. Sec'y of Health & Human Servs*., 835 F.2d 139, 140 (6th Cir. 1987). In the absence of a specific allegation by Plaintiff, the ALJ was not required conduct an independent review of all of Listings upon which she could conceivably base a Step Three argument.

-13-

Moreover, the case for remand fails even assuming that the ALJ erred by omitting mention of Listing 12.03 at Step Three. Plaintiff's contention that she is disabled under Listing 12.03 is based on the treating records noting her report of "hallucinations" and paranoia, both symptoms listed in the "A" criteria of Listing 12.03. However, evidence showing the presence of "A" symptoms (even all the symptoms) does not by itself result in a disability finding. As noted above, to meet Listing 12.03, Plaintiff was required to show that she met the "A" *and* "B" criteria or, the "C" criteria. The "B" and "C" criteria for Listing 12.03 is identical to the "B" and "C" of Listing 12.04 (Affective Disorders). *See* 20 C.F.R Part 404, Subpart P, Appendix 1, § 12.04. At Step Three, he ALJ considered whether Plaintiff was disabled as a result of depression and in finding that she did not meet Listing 12.04, thoroughly discussed the "B" criteria common to both listings (Tr. 14-15). He found that she did not meet Listing 12.04 because she experienced only mild and moderate limitations in activities of daily living, social functioning, and concentration, persistence, and pace ("CPP") (Tr. 14-15). He likewise found that Plaintiff did not meet any of the common "C" criteria (Tr. 15). The ALJ's finding that Plaintiff did not meet the "B" or "C" criteria precludes a Step Three disability finding under both Listing 12.03 and 12.04. Plaintiff has provided no basis to show that the ALJ's conclusion would change if the case were remanded.

Further, while Plaintiff appears to argue that she experienced marked or extreme limitations under the "B" criteria, the ALJ's finding that she experienced mild limitation in

-14-

activities of daily living and social functioning and moderate limitation in CPP is well explained and supported by substantial evidence. The ALJ noted that Plaintiff could perform self-care tasks, household chores and interact with her children, friends, and a variety of other individuals on a regular basis (Tr. 14-15). He cited treating records showing concentrational abilities within normal limits (Tr. 14-15). The ALJ acknowledged that Plaintiff reported hallucinations, but had "learned how to deal with them" (Tr. 17).

For these reasons, the omission of discussion of Listing 12.03 does not constitute error. A remand for discussion of the Listing 12.03 criteria would result in the same conclusion. Thus, Plaintiff's request for a remand should be denied. *See NLRB v. Wyman–Gordon*, 394 U.S. 759, 766 fn. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)) (plurality opinion) ("where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game"); *see also M.G., supra*, 861 F.Supp.2d at 860.

**B. Dr. Watt's May, 2015 Opinion**

In her second argument, Plaintiff argues that the ALJ failed to provide "good reasons" for giving only "some" weight to Dr. Watt's May, 2015 psychiatric assessment. *Plaintiff's Brief* at 18-20 (*citing Wilson v. CSS,* 378 F.3d 541, 544 (6th Cir. 2004)).

"[I]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v.*

*Astrue,* 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)*(citing Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, see *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson,* at 544.

Plaintiff is correct that the failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS,* 710 F.3d 365, 376 (6th Cir. 2013). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " *Gayheart,* at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

Plaintiff disputes the ALJ's finding that the treating opinion was not supported by

-16-

the the treating records, arguing that it does not amount to a "good reason" (Tr. 18-19). However, ALJ's rejection of the treating opinion because it was unsupported by the same treater's own examination records constitutes "good reasons." *See Harris v. Commissioner of Social Sec.,* 2009 WL 3672063, *21 (S.D.Ohio November 3, 2009)(same).   The ALJ's rationale was well-explained and supported.   He reasonably found that Dr. Watts' finding that Plaintiff experienced the medication side effects of dizziness, drowsiness, headache, nausea, blurred vision, upset stomach, fatigue, and insomnia (Tr. 332) was contradicted by the treating records showing only the side effect of "mild sedation" (Tr. 281) and Plaintiff's testimony that the side effects were limited to sleepiness (Tr. 18, 32).   The ALJ noted that Dr. Watts' finding that concentrational problems precluded competitive employment was contradicted by the treating records showing normal concentrational abilities (Tr. 18-19). The ALJ's findings are wholly consistent with my own review of the records showing consistently good concentration and judgment, particularly in the two months prior to Dr. Watts' assessment (Tr. 281, 210, 323, 329).   As such, the ALJ's partial rejection of Dr. Watts' May, 2015 opinion does not provide grounds for remand.

### C.  The Credibility Determination and Vocational Testimony

 In her third argument, Plaintiff contends that the ALJ's credibility determination was supported by only "boilerplate" language . *Plaintiff's Brief* at 20-22.  In her related final argument, Plaintiff submits, in effect, that the ALJ erred by failing to include all of her professed limitations in the RFC.  *Id.* at 22.

The ALJ's credibility determination begins in the second paragraph of transcript page 16 and ends at the middle of page 20.  Plaintiff is at least correct that the determination begins with "boilerplate" setting forth the applicable regulations to be considered in making the credibility determination and ends in summary that Plaintiff's allegations were "neither consistent  with the objective evidence or record nor the claimant's own statements and activities" (Tr. 16-20).  However, the ALJ did not rely on mere boilerplate to support the credibility determination.   The boilerplate is followed by a discussion of Plaintiff's allegations (Tr. 17), then a discussion of the contradicting medical evidence (Tr. 17-19). Contrary to Plaintiff's claim of disabling concentrational problems, the ALJ noted that the treating records showing mostly normal concentrational abilities and judgment (Tr. 17-18). He noted that Plaintiff denied side effects other than mild sedation (Tr. 17).  The ALJ observed that while Plaintiff missed a number of counseling sessions, the treating records showed that her psychological condition was unremarkable when she was compliant with treatment recommendations (Tr. 18).  He declined to accord weight to the relatively low GAF scores assigned by the treating sources, noting that the scores remained static even as Plaintiff's mental condition dramatically improved (Tr. 19).  He noted earlier in the opinion that she was able to engage in a wide variety of activities (Tr. 14).   Because his rationale is well support and articulated, the customary deference accorded an ALJ's credibility determination is appropriate here.  "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the

-18-

claimant's demeanor and credibility.' " *Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007) (*citing Walters v. CSS,* 127 F.3d 525, 531 (6th Cir. 1997); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989)) (*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record' ").

Likewise, Plaintiff's argument regarding the vocational testimony does not provide grounds for remand.  *Plaintiff's Brief* at 22.  The VE testified that if all of the professed allegations were credited, all work would be precluded (Tr. 36).  However, the ALJ was not obliged to adopt vocational testimony given in response to eventually discredited claims. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994)(ALJ not obliged to credit rejected claims in question to VE or by extension, in the ultimate RFC).  Because the ALJ provided a detailed explanation for discounting Plaintiff's claims of disabling social and concentrational limitations, he was not obliged to include them in the RFC.

In closing, my recommendation to uphold the administrative decision should not read to trivialize Plaintiff's personal problems or psychological history.  However, based on a careful reading of this record, I conclude that the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative level.  Pursuant to *Mullen v. Bowen, supra*, the ALJ's decision should not be disturbed by this Court.

## VI.  CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary

-19-

Judgment be DENIED, and that Defendant's Motion for Summary Judgment be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1 (d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 425 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificty will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: February 27, 2017

-20-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on February 27, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager